IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TRAVOR REED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 08-697-WS-N |
| | ) | |
| MICHAEL MCCRORY, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This matter is before the court on defendant's Answer (doc. 17) and Special Report (doc. 18) which the court has previously ordered (doc.19) converted to a Motion for Summary Judgment to plaintiff's Section 1983 complaint and plaintiff's reply to defendant's answer. (Doc. 21). The motion has been fully briefed and has been referred to the undersigned for entry of a Report and Recommendation, pursuant to 28 U.S.C. §636 and Local Rule 72. Upon consideration of the motion, the plaintiff's response thereto and the record as a whole, it is the recommendation of the undersigned that the defendant's motion for summary judgment be GRANTED.

Factual Background

Plaintiff, Travor Reed, is an inmate at W.C. Holman Correctional Facility in Atmore, Alabama. Defendant, Michael McCrory, was employed at Holman as a guard and, on the day of the fight, was assigned to the area where the fight occurred as a "rover." It was his duty to watch for and react to trouble in the cell-block.

On November 27, 2007[1], Reed was involved in a physical altercation with another inmate, Samuel Ellis. Ellis used a prison made knife or box cutter in the attack, cutting Reed several times in the arm. Reed's injuries were serious, requiring ninety-six (96) stitches inside and outside the cuts.

Plaintiff Reed alleges that, during the fight, various inmates were calling for Officer McCrory , but that McCrory was not present. In support of this allegation, Plaintiff offers affidavits from three other inmates[2] who state that McCrory was in the t.v. room, watching a football game.[3] The affiants state that they heard inmates yelling loudly for McCrory, but that he kept watching the game for some time–until the commercial break–before finally going to investigate.[4] At that point, McCrory ran toward the altercation. By the time McCrory arrived, plaintiff was on the ground, bleeding from multiple cuts to his arm.

However, two of the three witnesses who claim to have been in the t.v. room with McCrory at the time of the altercation also indicate that–though they heard the calls from the other inmates–they did not know that something serious was going on until they got outside the

---

[1] Plaintiff's complaint (doc. 4) alleges that the fight occurred on or about November 25, 2007. Defendant supplies the date of November 27, 2009, in his affidavit and Special Report.

[2] The affidavits were executed by Johnny Crawford, Tony Hollis, and Michael Kimble, and are attached as exhibits to plaintiff's Response.

[3] Plaintiff offers precise information about this, stating that the game was between the New England Patriots and the Philadelphia Eagles, and further stating that "[a]t that time, New England was like 13-0 and went on to an undefeated regular season." (Response to Answer/Motion, at 2.)

[4] Michael Kimble stated further that "[s]omeone told Officer McCrory to go into cellblock..." but he did not go for some time. Defendant McCrory offers his own affidavit, which contradicts the statements of plaintiff and his three witnesses. However, on consideration of a motion for summary judgment, the court resolves all legitimate factual disputes in favor of the non-movant.

room and McCrory started to run.  Michael Kimble stated that, "after much more noise occurred Officer McCrory finally went into the cellblock.  I followed Officer McCrory inside the cellblock, too, because when he started running I figured something bad had happened."  (Doc. Affidavit of Michael Kimble)  Similarly, Johnny Crawford stated "we all followed [McCrory] out the (sic) t.v. room when we saw him running like something had happened.  That's when I saw inmate Travor Reed bleeding loudly and holding his left arm."   (Doc., Affidavit of Johnny Crawford)

## Legal Standard

*Summary Judgment*

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. Id. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr

GMBH-Siegen, 965 F.2d 994, 999 (11th Cir.1992) (internal citations and quotations omitted). However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir.2004).

*Deliberate Indifference*

Reed alleges that McCory's actions in responding to the altercation between Reed and another prisoner constitutes deliberate indifference.[5] It is well settled that prison officials have a duty to intervene in an attack on an inmate, and significant delay in doing so may, *in certain circumstances*, constitute a deprivation of an inmate's Eighth and Fourteenth Amendment rights. *See* Davidson v. Cannon, 474 U.S. 344, 348 (1986)(*citing* Curtis v. Everette, 489 F.2d 516 (3rd Cir. 1973), *cert denied sub nom.,* Smith v. Curtis, 416 U.S. 995 (1974) (dismissal not proper where officials allegedly stood by and allowed attack by other inmate)).

The Eighth Amendment forbids punishments that are cruel and unusual in light of contemporary standards of decency. U.S. Const. amend. VIII. The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive in prison. Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care," and must "protect prisoners from violence at the hands of other prisoners." Id. at 832-33, 114 S.Ct. at 1976 (internal quotation omitted).

---

[5] Plaintiff alleges, in part that he "was confronted by an inmate at Holman Prison who cut me several times....Several inmates were calling Officer McCrory to try and get his attention. But he never came." (Doc. 4 at p. 4)

While prison officials are charged with ensuring the protection of inmates from violence by other prisoners, constitutional liability does not arise as a result of every injury suffered as a result of inmate on inmate violence.  Hernandez v. Florida Dept. of Corrections, 281 Fed.Appx. 862, 866 (11th Cir., June 09, 2008) *citing* Farmer, 511 U.S. at 833, 114 S.Ct. at 1976-77.  "In order to be held liable for failing to prevent an attack from other inmates, a prison official 'must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. *quoting* Farmer, 511 U.S. at 837, 114 S.Ct. at 1979.  Moreover, allegations of merely negligent conduct do not rise to a constitutional claim and are therefore not actionable under Section 1983.[6]  Id. *citing* Farrow v. West, 320 F.3d 1235, 1245 (11th Cir.2003); *see also* Purcell ex rel. Estate of Morgan v. Toombs County, 400 F.3d 1313, 1320-23 (11th Cir.2005)(While an "excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm," "occasional isolated attacks by one prisoner on another may not constitute cruel and unusual punishment.")

In order to state an Eighth Amendment violation, a prisoner must allege facts to satisfy both an objective and subjective inquiry regarding a prison official's conduct. Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir.2004). Under the "objective component," a prisoner must allege a condition that is sufficiently serious to violate the Eighth Amendment. Id.  The challenged condition must be extreme and must pose an unreasonable risk of serious damage to the prisoner's future health or safety. Id.  Second, the prisoner must allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference. Id.

---

[6] In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) a person acting under color of state law; (2) deprived him of a right secured by the Constitution. 42 U.S.C. § 1983.

The Eleventh Circuit has explained the deliberate indifference analysis, in part, as follows:

> Because deliberate indifference requires a much higher standard of fault than mere or even gross negligence, *see* Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir.2005), the risk involved must be of sufficiently serious magnitude--a substantial risk of serious harm, which in this context denotes a "strong likelihood" of serious harm. *See* Cook v. Sheriff of Monroe County, 402 F.3d 1092, 1115 (11th Cir.2005) ("[D]eliberate indifference requires that the defendant deliberately disregard a strong likelihood rather than a mere possibility that the ... harm will occur.") (internal quotation marks omitted); *see also* Stinson v. County of Montgomery, 286 Fed.Appx. 629, 635 (11th Cir.2008) (unpublished) (noting that "mere general calls for staff assistance and assertion that C.P. was 'messing with' him were not enough to inform the Officers that [plaintiff] faced a substantial risk of serious harm").
>
> Furthermore, the Supreme Court has expressly rejected "an objective test for deliberate indifference" in favor of a subjective approach. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). An official acts with deliberate indifference only when he disregards a substantial risk of serious harm "of which he is actually aware." Foltz, 370 F.3d at 1083 (*citing* Farmer, 511 U.S. at 836, 114 S.Ct. at 1978). It is not enough to show that an official is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; "he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979 (emphasis added); *see also* Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir.2008) ( "No liability arises under the Constitution for an official's failure to alleviate a significant risk that he should have perceived but did not.... As such, imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual Defendant must be judged separately and on the basis of what that person knows.") (citation and internal quotation marks omitted).
>
> Nor is it enough for a plaintiff to demonstrate a defendant's subjective knowledge of a substantial risk of serious harm; the plaintiff must also show that with that knowledge, the defendant nonetheless knowingly or recklessly "disregard[ed] that risk by failing to take reasonable measures to abate it." Hale v. Tallapoosa County, 50 F.3d 1579, 1583 (11th Cir.1995) (internal quotation marks omitted); *see also* Farmer, 511 U.S. at 844, 114 S.Ct. at 1982-83 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."). Implicit in that inquiry is the requirement that the defendant must have known of feasible "means to cure that condition, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to

prevent it." LaMarca v. Turner, 995 F.2d 1526, 1536 (11th Cir.1993) (internal quotation marks omitted); *see also* Hale, 50 F.3d at 1583 ("[U]nder this standard, a jury could reasonably find that [the defendant] failed to take reasonable measures to abate a known risk of harm if the evidence showed that he knew of ways to reduce the harm but knowingly declined to act, or that he knew of ways to reduce the harm but recklessly declined to act.") (internal quotation marks omitted). The court must remain mindful of the need to avoid "second-guessing the difficult choices that ... officials must face and of improperly extending deliberate indifference standards to mere inadvertence or errors in good faith." Hale, 50 F.3d at 1584 (internal quotation marks omitted).

A.P. ex rel. Bazerman v. Feaver, 293 Fed. Appx. 635, 651-53 (11th Cir. 2008)

The Eleventh Circuit has further explained:

> Under Farmer, establishing knowledge on the part of the actor need not be accomplished solely by direct evidence; a factfinder is permitted to infer from circumstantial evidence that the actor actually drew the inference that the circumstances posed a substantial risk of harm. Id. at 842, 114 S.Ct. at 1981. Indeed, it is possible to premise this inference on "the very fact that the risk was obvious." Id. Obviousness of the risk thus plays a role in both the subjective and the objective tests. The difference, when the tests are put into practice, is a fine one. The objective test is satisfied if a grave risk is sufficiently obvious, because the person "should have" been aware of the risk regardless of whether he actually recognized it. *See* Saba, 78 F.3d at 669. The subjective test, on the other hand, precludes a finding of liability if the factfinder concludes that, even though a grave risk is obvious, no inference can be made that the actor actually became aware of the risk. *See* Farmer, 511 U.S. at 844, 114 S.Ct. at 1982 ("That a trier of fact may infer knowledge from the obvious ... does not mean that it must do so."). In this way, a plaintiff may rely solely upon circumstantial evidence related to the obviousness of a grave risk to satisfy both tests, but the subjective test is satisfied only if the circumstances also permit an inference that the actor "must have known" about the risk. Id. at 842-43, 114 S.Ct. at 1981-82. "It is not enough merely to find that a reasonable person would have known, or that the defendant should have known," of the risk. Id. at 843 n. 8, 114 S.Ct. at 1982 n. 8. Thus, while an objective test asks whether an actor "should have known" of an obvious risk, the subjective test requires, at a minimum, a showing that the actor "must have known" of the risk. *Cf.* Spruce v. Sargent, 149 F.3d 783, 786 (8th Cir.1998).

Piamba Cortes v. American Airlines, Inc., 177 F.3d 1272, 1290-91 (11th Cir. 1999).

Accordingly, in order to establish deliberate indifference, a plaintiff must allege that the defendant had (1) subjective knowledge of a substantial risk of serious harm, and

yet (2) disregarded that risk (3) "by conduct that is more than mere" or gross negligence. A.P. ex rel. Bazerman v. Feaver, 293 Fed. Appx. at 651-53 *citing* McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir.1999); Farrow v. West, 320 F.3d 1235, 1245 (11th Cir.2003) ("[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.")

Analysis

Assuming Officer McCrory's alleged presence in the t.v. room was in violation of prison rules, that violation is not sufficient to turn negligence into deliberate indifference. Specifically, that alone does not show that Officer McCrory subjectively knew of the substantial risk of serious harm to Reed. *See* A.P. ex rel. Bazerman v. Feaver, 293 Fed.Appx. at 635, 654 and n.63.

Likewise, the Eleventh Circuit has held that general calls for assistance that go unanswered are not sufficient to reach the deliberate indifference standard. *See* Stinson v. County of Montgomery, 286 Fed.Appx. 629 (11th Cir. 2008) (unpublished). In Stinson the Court noted that "mere general calls for staff assistance and assertion that C.P. was 'messing with' him were not enough to inform the Officers that [plaintiff] faced a substantial risk of serious harm." Id. at 635. Plaintiff Reed's evidence fails on this point, as well. Reed and his witnesses state that inmates called for defendant McCrory, but not one witness states that the calls were specific as to the problem, nor even of its severity and of a time sensitive nature. Indeed, the statements of witnesses Kimble and Crawford belie any indication that people in the room who actually heard the calls drew

such a conclusion: rather, the two witnesses state that it was not until McCrory got outside and began to run that they recognized that something serious was occurring. Plaintiff's evidence is insufficient to demonstrate that McCrory subjectively must have known of the risk because of the calls of other inmates. Thus, it appears that plaintiff's evidence is insufficient to bear his burden to show defendant McCrory's subjective appreciation of the risk of harm, and thus to show deliberate indifference.

*Official Capacity*

To the extent to which plaintiff may have stated a claim against defendant in his official capacity, any such claim is barred by the Eleventh Amendment. With exceptions which are not relevant here, "[a] state official may not be sued in his official capacity." Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1429 (11th Cir. 1997). Alabama deputy sheriffs and jailers are state officials, and are entitled to immunity to suit for damages in their official capacities. Id., at 1429-30. Thus, to the extent plaintiff's complaint makes a claim against defendant in his official rather than individual capacity, such claim is barred, and is due to be dismissed.

*Qualified Immunity*

Defendant has also raised the defense of qualified immunity." Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " Lassiter v. Ala. A & M Univ., Bd. of Tr., 28 F.3d 1146, 1149 (11th Cir.1994) (*en banc*) (*quoting* Harlow v. Fitzgerald, 457 U.S. 800,

9

818 (1982)).  When an official is eligible for qualified immunity because he performed a discretionary function, the burden shifts to the plaintiff.  Jenkins v. DeKalb County, Ga., 307 Fed. Appx. 390. 395 (11th Cir. 2009).  The two factors to be shown are that there was [allegedly] a violation of a constitutional right, and also that "the right at issue was clearly established at the time of [the] ... alleged misconduct." Pearson v. Callahan, --- U.S. ----, ----, 129 S.Ct. 808, 816 (2009) (internal quotation marks and citation omitted).  The court may consider these factors in whichever order it chooses.  Id. at ----, 129 S.Ct. at 818. Because the plaintiff has failed to offer evidence from which a reasonable jury could find that defendant subjectively knew of the risk of harm, and thus that defendant McCrory was deliberately indifferent, the undersigned recommends that the court find that defendant would also be entitled to qualified immunity.[7]

## Conclusion

For the foregoing reasons, it is RECOMMENDED that the court GRANT defendant's Motion for Summary Judgment, and that judgment be entered in favor of the defendant.

See Magistrate Judge's Explanation of Procedural Rights, attached.

---

[7] The court also has lingering questions about the length of the fight and of the delay in defendant McCrory's response, and thus plaintiff's ability to prove that the delay was the cause of plaintiff's injuries.  *See* Jenkins v. Dekalb County, Ga., 307 Fed. Appx. 390 (11th Cir. 2009). Causation demands "proof of an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir.1993) (*quoting* Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir.1982)).  An official's acts or omissions must be "the cause[,] not merely a contributing factor" of the constitutional violation. Id.  If plaintiff would not have been saved any of his injuries had McCrory responded immediately, it can not be said that defendant's delay caused those injuries.  Because of the recommended finding that plaintiff failed to show deliberate indifference, the court does not address the causation issue further.

DONE this the 19th day of November, 2009.

                                              /s/ Katherine P. Nelson
                                              KATHERINE P. NELSON
                                              UNITED STATES MAGISTRATE JUDGE

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**. Any party who objects to this recommendation or anything in it must, within
**five (5) days** of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the
findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR
72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, **unless a different
> time is established by order**. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

(Empahsis added)  A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

12